## Court of Appeals.

### October 26, 1895.

## PEOPLE ex rel. WILLIAM BARNES, JR. v. COURT OF SESSIONS OF ALBANY COUNTY.

#### (69 S. R. 667.)

Contempt—Mandate.

The mandate or judgment in a contempt proceeding, where it convicts the person charged of a criminal contempt and imposes punishment by fine and imprisonment, must specify the particular circumstances of the offense, as required by section 11 of the Code.

Appeal from order of the general court of the supreme court in the third judicial department, 1894, which affirmed, on cer- tiorari, a judgment of the court of sessions of the county of Albany adjudging relators guilty of a criminal contempt, and dis- missed the writ of certiorari.

The mandate of commitment, or final order entered in the proceeding in the court of sessions, was as follows: " On the 12th day of May, 1894, the matter again came before us, on all the papers in the proceeding, the parties appeared in person and by counsel and after hearing Matthew Hale, Esq., of counsel for the defendants, and James W. Eaton, Esq., district attorney of the county of Albany, we did determine and adjudge the said William Barnes, Jr., George N. Southwick and Arthur Lucas to be guilty of criminal contempt of court, and did sentence said William Barnes, Jr., George N. Southwick and Arthur Lucas, as a punishment for said offense, to each pay a fine of $100, or, in lieu thereof, to each stand committed to the Albany county jail for the period of thirty days."

, Matthew Hale, for app'lts.

James W. Eaton, for resp't.

HAIGHT, J.—It is charged that on the morning of April 12th, 1894, the relators, as the editors and publishers of the Albany Morning Express, published in that paper two articles, one in the editorial column, entitled " The disgrace of Clute," and the other in the news column, entitled " His action needs explanation." That these articles reflected seriously upon the motives and action of the judge presiding at the court of sessions, and that they amounted to a criminal contempt.    The editorial proceeds as follows: " County Judge Jacob H. Clute added to his unsavory notoriety yesterday by assigning Arthur L. Andrews and Henry A. Peckham to defend men who were arrested on election day charged with attempting to vote illegally.

" Messrs. Andrews and Peckham have been prominent among the lawyers whose services have been given freely and without charge to prosecuting violators of the election laws.    Of this fact Jacob H. Clute, of course, was fully aware, not only because their activity in the interest of honest election has been a matter of current news, but also because they have appeared before Judge Clute's own tribunal in the performance of their duty.

" In the light of these facts the low-down character of the judicial trick to which Jacob H. Clute descended may be realized.

He availed himself of his power as county judge to place these two worthy lawyers, who have fought to prevent suffrage stealing in Albany, in the dilemma of defending election criminals or else subjecting themselves to a fine of $500 and imprisonment for thirty days for contempt of court."

Then follows a denunciation of the judge in unmeasured terms with allusion to his judicial action in other cases.

The proceedings were instituted upon the affidavit of James W. Eaton, the then district attorney, upon which the order was issued for the relators to show cause why they should not be punished for contempt. On the return day the relators appeared personally and their counsel moved to vacate the order to show cause, which was denied. They thereupon filed their answer, which is as follows: "The above-mentioned defendants, and each of them, hereby deny, each for himself, that he has been guilty of the publication of any false or grossly inaccurate reports of any of the proceedings of the said court." Interrogatories were thereupon filed requiring the relators to answer as to whether they were the editors and publishers of the articles in question. Answers having been filed the court entered the following mandate or judgment:

"On the 12th day of May, 1894, the matter again came before us, on all the papers in the proceeding, the parties appearing in person and by counsel, and after hearing Matthew Hale, Esq., of counsel for the defendants, and James W. Eaton, Esq., district attorney of the county of Albany, we did determine and adjudge the said William Barnes, Jr., George N. Southwick and Arthur Lucas to be guilty of criminal contempt of court, and did sentence said William Barnes, Jr., George N. Southwick and Arthur Lucas, as a punishment for said offense, to each pay a fine of one hundred dollars, or in lieu thereof to each stand committed to the Albany County jail for the period of thirty days."

The comments in the articles published reflecting upon the character and conduct of the presiding judge were of a most extraordinary nature. It is to be regretted that the editors and publishers of a prominent and influential journal should so far violate their privilege and misconceive their duty to the public. The publication of the articles was exceedingly harmful. They tended to bring into disrepute the administration of the law, and to de-

stroy the confidence of the public in and its respects for the proceedings of our courts. If the judge is guilty of the acts charged complaint should be made to the proper officers, and proceedings instituted for his removal. If he is not guilty, the dignity of the court should be preserved by the prompt punishment of the offenders. The punishment, however, must be inflicted under due forms of law, and such must be the point of our inquiry with reference to the proceedings under review.

Criminal contempt of court is defined as: " 1. Disorderly, contemptuous, or insolent behavior, committed during its sitting, in its immediate view and presence, and directly tending to interrupt its proceedings, or to impair the respect due to its authority. 2. Breach of the peace, noise, and other disturbance, directly tending to interrupt its proceedings. 3. Willful disobedience to its lawful mandate. 4. Resistance willfully offered to its lawful mandate. 5. Contumacious and unlawful refusal to be sworn as a witness; or, after being sworn, to answer any legal and proper interrogatory. 6. Publication of a false, or grossly inaccurate report of its proceedings. But a court can not punish as a contempt, the publication of a true, full, and fair report of a trial, argumet, decision or other proceeding therein." Code of Civil Procedure, § 8.

Such contempt may be divided into two classes: 1. That which is committed in the immediate view and presence of the court; and 2. That which is committed out of court. When the contempt is committed in the view and presence of the court, it may be punished summarily ; when not so committed, the party charged must be notified of the accusation, and have a reasonable time to make a defense. Code Civ. Pro., § 10. The publication of a false and grossly inaccurate report of a proceeding in court belongs to the latter class, and as we have seen, the party charged must be notified of the accusation.

It is urged on the part of the appellants that the court obtained no jurisdiction to punish them for contempt, for the reason that the order to show cause was based upon the affidavit of the district attorney, which was made wholly upon information and belief, and that it failed to specify the part or portions of the articles published which were claimed amounted to a contempt, and also, that there was no sufficient evidence showing that the articles were

published by the appellants and were grossly false and inaccurate. The conclusion reached by us renders it unnecessary to consider these questions in detail. The court undoubtedly obtained jurisdiction of the appellants when they appeared before it and were charged with the contempt. The only office of the order to show cause was to bring them before the court, and if it was issued on an insufficient affidavit, they must now be deemed to have waived the defect by their personal appearance and answer. If they deny guilt they doubtless have the right to have it established by evidence in so far as it is not within the personal knowledge of the court. The court had personal knowledge of its own proceedings. It could not, however, have had personal knowledge as to whether the appellants were the editors and publishers of the articles or as to whether the attorneys mentioned in the article were the counsel of the so-called committee of fifty. But for the purposes of this case we shall assume that the proceedings were regular and that the evidence was sufficient to warrant the conviction. Our difficulty is with the formal mandate or judgment. As will be seen, it convicts the appellants of a criminal contempt and imposes punishment by fine and imprisonment. It does not specify the particular circumstances of the offense. In case of criminal contempt this is specifically required : " When a person is committed for such a contempt the particular circumstances of his offense must be set forth in the mandate of commitment." Code Civ. Pro. § 11. This is but a re-enactment of the Revised Statutes, which provided that " whenever any person shall be committed for any contempt specified in this article, the particular circumstances of his offense shall be set forth in the order or warrant of commitment. 2 R. S. 377. Under the Revised Statutes it is called the " order or warrant;" under the Code it is called the " mandate of commitment." They doubtless mean the same and relate to the final order entered in the proceeding. This is no new doctrine. Rapalje on Contempts, at page 178, says, " the final order must designate the particular misconduct of which the defendant is convicted." In De Witt v. Dennis, 30 How. 131, MORGAN, J., says : " The order of conviction is not sufficiently definite and specific, and does not properly describe the particular misconduct for which he is convicted." And for this reason the order con-

victing the person of contempt was set aside.    The same rule pre-
vails in England.    Oswald on Contempt, at page 158, says : " An
order of committal is bad if it does not specify in what particulars
the person committed has been guilty of contempt." In the. Pol-
lard case, 2 P. C. 120, it was said that " No person should be
punished for contempt of court (which was a criminal offense) un-
less the specific offense charged against him was distinctly stated."
See, also, In re John Rea, 14 Cox's Criminal Law Cases, 139 ;
Reg. v. County Court Judge of Lambeth, 36 W. R. 475 ; People
ex rel. Johnson v. Nevins, 1 Hill, 154.

The reason for the statute is perfectly apparent. In the criminal
contempts committed in the immediate view of the court it may
punish summarily.    The only record preserved is in the final order
or mandate of the court entered in the minutes of the clerk.    If
the particular circumstances of the offense were not required to
be set forth, there would be nothing that the accused could have
reviewed, or that he could interpose as a defense to a subsequent
conviction for the same act.    If the court saw fit to call his act,
no matter what it might be, a criminal contempt, that determina-
tion would of necessity be final, even though the act of the ac-
cused consisted in the putting on of his hat as he was going out of
the court room door, and failed to come within any of the provi-
sions of the Code constituting a contempt of the court.    The rule
applies with equal force to contempts which are not committed in
the presence of the court, and its importance is made apparent in
the present case.    The articles published, as we have seen, con-
tained numerous accusations and denunciations of the judge.
These accusations and denunciations may be libelous, but they
were not within the statute contempts of court.    It was only in
so far as the articles complained of purported to give the proceed-
ings of the court of sessions that there could not be a contempt
if it were true and fair.    The appellants, therefore, had the right
to know whether they were adjudged guilty because of the pub-
lication of such proceedings of the court, or whether they were ad-
judged guilty by reason of other matters that appeared in the articles.

The order appealed from should be reversed and the proceedings
dismissed, but, under the circumstances, without costs to either party.

All concur, except PECKHAM, J., not sitting.