TASTEE INN, INC., A CORPORATION, PLAINTIFF IN ERROR, V. BEATRICE FOODS CO., INC., A CORPORATION, DEFENDANT IN ERROR.
HAROLD L. JORGENSON, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA ET AL., DEFENDANTS IN ERROR.
92 N. W. 2d 664

Filed October 31, 1958. No. 34399.

*William L. Walker* and *Earl Ludlam,* for plaintiffs in error.

*Cline, Williams, Wright & Johnson,* for defendant in error Beatrice Foods Co., Inc.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This case concerns the conviction of Harold L. Jorgenson and Tastee Inn, Inc., plaintiffs in error, for a direct contempt of the district court for Lancaster County said to have been committed by Harold L. Jorgenson while he was being examined as a witness in the trial of a civil case in which Tastee Inn, Inc., was plaintiff and Beatrice Foods Co., Inc., was defendant, at a session of the court in the presence and hearing of the presiding judge. Plaintiffs in error contest the legality of the adjudication against them.

This case must be determined by the record made of the proceedings for contempt against them as evidenced by the journal of the court. It is, omitting formal parts, as follows: "This cause (Tastee Inn, Inc., v. Beatrice Foods Co., Inc.) came on for trial beginning October 14, 1957, which trial was adjourned from day to day to and including October 18, 1957; evidence was adduced by the plaintiff, and October 17, 1957, Harold L. Jorgenson was called as a witness and testified that he was president of the plaintiff corporation; on cross-examination he was asked to name the stockholders in said corporation and he refused to testify in said regard; no objections had been made to the questions of defendant's counsel in regard thereto; and the court finds that said questions asked by defendant's counsel with reference to the identity of the stockholders of the plaintiff company were relevant and material; by reason of the refusal of said witness produced by the plaintiff to answer said questions, the court finds said witness to be in contempt of court; by reason of the fact that said witness was the president and majority stockholder of plaintiff, the court also finds the plaintiff to be in contempt of court. The court therefore, on its own motion, finds that a mistrial should be declared in this proceeding and that all costs of trial incurred to this date, including jurors' fees, shall be taxed to the plaintiff, and that in addition an attorney fee to de-

fendant's counsel in the amount of $500 should be allowed and taxed against the plaintiff as costs in this proceeding. IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the said Harold L. Jorgenson and the plaintiff are guilty of contempt of court in this proceeding and that the trial of this case be and the same hereby is declared to be a mistrial, and that the costs of this trial, including jurors' fees, be and the same are hereby taxed against the plaintiff. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the attorneys for the defendant be and they are hereby allowed the sum of $500 for services rendered by said attorneys during the trial of this cause, which amount is hereby taxed against the plaintiff as additional costs in this proceeding."

The record is challenged as insufficient to justify the action taken by the court as recited therein. Specifically it is said that the judgment is not supported by sufficient or any evidence and that the findings do not sustain the judgment.

In Crites v. State, 74 Neb. 687, 105 N. W. 469, the record of the court exhibited the following findings: " 'The said Albert W. Crites was examining the defendant Benjamin F. Pitman while the said Pitman was on the witness stand as a witness, and in open court, in the presence of the jury, the court advised the said Albert W. Crites not to examine the witness any further in relation to certain matters as shown by the record; that, after the court had advised the said Albert W. Crites not to examine the witness any further as to this particular matter referred to by the court, the said Albert W. Crites, immediately, in strict violation of the order of the court, again asked certain questions in relation to the same matter. Whereupon, the court advised counsel again not to examine any further as to the matter referred to by the court, and that if he did so he might consider himself in contempt of court; that counsel then advised the court in words, or in sub-

stance, that he was going to ask another question anyway; that the attorney did then immediately ask another question, which question was in strict violation of the order of the court; and the court, being fully advised in the premises, finds that said Albert W. Crites is guilty of contemptuous and insolent behavior toward the court and is in contempt of court, and that said contempt and the contemptuous and insolent behavior was committed in the presence of the court and while the court was in open session.' " The court adjudged Albert W. Crites guilty of direct contempt of court, imposed a fine upon him, and ordered that he stand committed until the fine was paid. This court in deciding that case said: "This was a summary proceeding to punish an alleged contempt committed in the presence of the court. No written charge or complaint was filed, which the accused could examine and attack, and no evidence was taken or submitted to establish the charge, which the accused could combat or explain. In such a case it is absolutely necessary for the preservation of the liberties of the citizen that, in recording the conviction, the court shall state the facts showing the contempt charged. It is not sufficient to state in a general way the conclusions of fact on which the conviction is based. The facts themselves must be stated, from which the reviewing court can see that the ultimate fact of guilt is properly and justly found. The findings of the court fail to meet this requirement. The record contains a bill of exceptions setting forth the proceedings in which the plaintiff was adjudged guilty of contempt. This does not aid the findings or supply such facts as should be contained therein."

In Ogden v. State, 3 Neb. (Unoff.) 886, 93 N. W. 203, the record of the conviction of Charles Ogden of a direct contempt of court was reviewed and the judgment was reversed. The findings from which the conviction resulted were as follows: " 'On this day again come the parties hereto attended by their counsel; also come the

jury heretofore duly impaneled and sworn and this cause proceeds. Whereupon the court finds that Charles Ogden, Esq., counsel for the said defendant, did on this day address to the court on the trial of this case insulting and menacing language; that he has threatened opposing counsel with an assault, and did willfully refuse to obey the order of the court to take his place at the counsel table and be seated.'" The judgment of conviction and the imposition of a fine were shown by the record. This court said: "In our opinion, the judgment can not stand. * * * It will be observed that the proceedings were conducted on the theory that the contempt was committed in the presence of the court. While it has been held that a formal accusation is not necessary under such circumstances, it is undoubtedly essential that it should affirmatively appear on the face of the record with all the certainty of an indictment or information, that an offense had been committed. In our judgment, such fact does not thus appear in this case. The language, which the trial court held to be insulting and menacing, is not set out. It will not be claimed that an indictment or information, thus charging an analogous offense, would be good. Hence, the record, in that behalf, is insufficient to sustain a judgment of conviction." This court noticed the specification that the attorney refused to obey the order of the district court to take his place at the counsel table and be seated and made this observation: "The circumstances, under which the order was made in this case, do not appear. It follows that the judgment of the district court can not be sustained * * *."

Wilcox v. State, 46 Neb. 402, 64 N. W. 1072, involved the refusal of Sherman Wilcox to be sworn and his refusal to testify in a proceeding for his examination in aid of execution. Jeremiah C. Wilcox appeared in court and was sworn but refused to give any testimony in the proceeding. The opinion states: "The record shows the following proceedings were had and taken:

'Whereupon the said Sherman Wilcox, now being before the court, refused to be sworn and refused to testify. Thereupon the said Sherman Wilcox was adjudged to be in contempt of court,' * * *." He was committed to the county jail until he signified his willingness to submit to an examination. The opinion then states: "The record further discloses that Jeremiah C. Wilcox appeared before Judge Blair, and upon being sworn, refused to give testimony. Thereupon he was adjudged guilty of contempt, and sentenced to pay a fine of $100, and to stand committed to the jail of the county until such fine is paid and he signify his willingness to answer such questions as might be put to him * * *." This court in the disposition of this case said: "It requires no argument to show that in this state a witness in court may be sworn by taking the statutory oath, or he may refuse to be sworn on the ground of conscientious scruples, in which case he may affirm. There can be no doubt that where a witness in a court of record, on being ordered to be sworn or affirmed, contumaciously refuses to do either, he is guilty of contempt; but it is not a contempt of court for a witness to decline merely to be sworn by taking the usual oath administered to witnesses, since the statute gives him the right to affirm. The finding of the district judge was insufficient and fatally defective, in that it failed to set forth that Sherman Wilcox refused to be affirmed, as well as declined to be sworn. Presumptions and intendments will not be indulged to support a conviction for contempt of court. * * * It remains to be determined whether the plaintiffs in error were rightfully adjudged guilty of contempt for refusing to testify. It cannot be doubted that the refusal of a witness to testify at all may be punished as a contempt of the court or officer of whom his testimony is required, in case the court or officer has jurisdiction of the controversy or proceeding in which the witness is called upon to give his evidence. The statute, section 360 of the Code of Civil Procedure

(now section 25-1232, R. R. S. 1943), provides: 'Every attachment for the arrest, or order of commitment to prison of a witness by a court or officer, pursuant to this chapter, must be under the seal of the court or officer, if he have an official seal, and must specify particularly the cause of the arrest or commitment; and if the commitment be for refusing to answer a question, such question must be stated in the order.' The language quoted is imperative, and requires, when a witness is committed for contempt for refusing to testify, or answer a question asked him, that such question asked and refused to be answered shall be stated in the order of commitment. This was not done in either of the orders under review. So far as this record discloses, no question of any kind was propounded to either of the plaintiffs in error, or that either refused to answer any legal or proper interrogatory. The findings, for this reason, are wholly insufficient upon which to base the convictions. The orders adjudging plaintiffs in error guilty of contempt must be set aside."

Gonzalez v. State, 119 Neb. 13, 226 N. W. 801, declares: "A judgment of contempt must state the facts constituting the contempt, and a judgment which merely states the conclusion of the court will not sustain a sentence of imprisonment for contempt."

In re Shull, 221 Mo. 623, 121 S. W. 10, 133 Am. S. R. 496, was a habeas corpus proceeding. Shull sought habeas corpus to release him from a judgment of conviction of direct contempt of court and his commitment to jail. The court found in the contempt proceedings that Shull had treated the court disrespectfully in refusing to answer proper and legal questions propounded to him while he was a witness in the trial of a certain civil case after he had been repeatedly admonished and ordered by the court to answer the questions. The Missouri court referred to and considered statutes substantially like the provisions of this state relative to contempt of court by refusal of a witness to answer questions

asked of him, and used this language: "The statutes require that when a citizen is committed to jail for a contempt the commitment itself must contain 'the particular circumstances of his offense,' and the contempt must be plainly and specifically charged in the commitment. * * * A recital in the order leading up to the adjudication of contempt that the witness was asked 'proper and legal questions,' that the court had ruled them to be such, and the witness was directed to answer them and refused, falls far short of specifically and plainly charging the contempt, as the statute requires. * * * It is not sufficient that the adjudication of contempt recite that the witness 'is hereby ordered and adjudged guilty of contempt of court in treating the court disrespectfully and he is hereby committed,' etc. That is a recital of a conclusion, not a finding and adjudication of the facts which constituted disrespectful conduct." In the opinion the court stated its conclusion in this language: "Without further discussion, we think the judgment of contempt and the commitment are fatally defective in not finding and adjudging the facts which would show petitioner had acted so disrespectfully towards the circuit court as to constitute a contempt within the statute. It is settled law in this State that one imprisoned for the violation of an order or judgment in excess of the jurisdiction of the court rendering it can be discharged by writ of habeas corpus. * * * The prisoner is discharged."

Wallace v. Weber, 134 Kan. 201, 5 P. 2d 855, states: "A written accusation on a contempt committed in the face of the court is not required, nor is evidence necessary, as the judge knows what transpired in his presence, but as a substitute for the written accusation, warrant or other statutory requirement for the protection of the accused, the statute provides that the judge shall enter of record the conduct constituting the contempt * * *. This, too, is jurisdictional in character and enables the accused to have a test or review in a superior court

of the validity of the judgment pronounced. The proceeding in a direct contempt is summary, of an arbitrary nature and might be subject to abuse and hence the legislature has required that the court or judge shall make these entries before the contemner shall be sent to jail or otherwise enforce the conviction and judgment. The making of the required entries is essential to the validity of the conviction, and the mere statement that the accused was guilty of contempt without specifying the acts constituting the contempt * * * is insufficient to a valid order of commitment."

State v. Dufek, 49 N. D. 851, 193 N. W. 928, contains this: "The defects above pointed out are fatal to the judgment in the instant case. It is not sufficient that the record upon appeal shall show that a contempt has, in fact, been committed, but it is essential that the record shall show that the defendant has been duly convicted of a specific contempt, and that if it be a direct contempt, that the order or judgment shall contain the requisite findings of fact * * * in order that it shall appear that no valuable right of the party accused may have been denied him."

People v. Rongetti, 344 Ill. 107, 176 N. E. 292, states: "In cases of direct contempt, committed in open court, the only record required to be made up is the order of the court finding the contempt to have been committed and fixing the punishment therefor, which order should set out the facts constituting the offense so fully and certainly as to show that the court was authorized to make the order."

People ex rel. Barnes v. Court of Sessions, 147 N. Y. 290, 41 N. E. 700, extensively discusses the history and reason of the rule now being considered. It contains the following: "Our difficulty is with the formal mandate or judgment. As will be seen, it convicts the appellants of a criminal contempt * * *. It does not specify the particular circumstances of the offense. In case of criminal contempt this is specifically required: 'When

a person is committed for such a contempt the particular circumstances of his offense must be set forth in the mandate of commitment.' (Code C. P. section 11.) This is but a re-enactment of the Revised Statutes, which provided that 'whenever any person shall be committed for any contempt specified in this article, the particular circumstances of his offense shall be set forth in the order or warrant of commitment.' (2 R. S. 377.) Under the Revised Statutes it is called the 'order or warrant;' under the Code it is called the 'mandate of commitment.' They doubtless mean the same and relate to the final order entered in the proceeding. This is no new doctrine. * * * In DeWitt v. Dennis (30 How. Prac. 131) Morgan, J., says: 'The order of conviction is not sufficiently definite and specific, and does not properly describe the particular misconduct for which he is convicted.' And for this reason the order convicting the person of contempt was set aside. The same rule prevails in England. * * * In the Pollard case (2 P. C. 120) it was said that 'No person should be punished for contempt of court (which was a criminal offense) unless the specific offense charged against him was distinctly stated.' * * * The reason for the statute is perfectly apparent. In the criminal contempts committed in the immediate view of the court it may punish summarily. The only record preserved is in the final order or mandate of the court entered in the minutes of the clerk. If the particular circumstances of the offense were not required to be set forth, there would be nothing that the accused could have reviewed, or that he could interpose as a defense to a subsequent conviction for the same act. If the court saw fit to call his act, no matter what it might be, a criminal contempt, that determination would of necessity be final * * *."

Annotation, 154 A. L. R. 1228, refers to very numerous decisions in support of the statement: "It has been held, in the overwhelming majority of jurisdictions, that an order or judgment of direct contempt must con-

tain a statement of the facts upon which the decision is based, the purpose of this requirement being to enable the appellate court to determine, by an inspection of the record, whether a contempt has in fact been committed and whether the court had jurisdiction to punish it." See, also, State ex rel. Aldrich v. District Court, 133 Iowa 450, 110 N. W. 592; Tweddle v. Judge of Superior Court, 134 Mich. 237, 96 N. W. 22; People ex rel. Bernstein v. La Fetra, 157 N. Y. S. 386; Ex parte Creasy, 243 Mo. 679, 148 S. W. 914, 41 L. R. A. N. S. 478; People v. Bain, 268 Ill. App. 192; Ex parte Redmond, 156 Miss. 582, 126 So. 485; In re Moxcey, 9 Kan. App. 262, 59 P. 672; In re Battelle, 207 Cal. 227, 277 P. 725, 65 A. L. R. 1497.

The record of conviction of plaintiffs in error of contempt may not be aided by presumption or intendment. The record alone must show facts to justify the conviction or it cannot be sustained. The statement therein of conclusions of the court, as appears in this case, does not satisfy or comply with this requirement. The facts by virtue of which a conviction for direct contempt results must establish the guilt of the contemner beyond a reasonable doubt. Such a prosecution is governed by the strict rules applicable to prosecution by indictment. This court said in Crites v. State, *supra:* "No intendments or presumptions can be indulged in to sustain the judgment of the trial court in a contempt proceeding. Such a proceeding is criminal in its nature, and the rules governing criminal proceedings are applicable thereto."

Frye v. Frye, 158 Neb. 694, 64 N. W. 2d 468, declares: "Contempt proceedings are in their nature criminal and no intendments will be indulged in to support a conviction. * * * In a contempt proceeding before a conviction will lie, guilt must be established beyond a reasonable doubt." See, also, State ex rel. Wright v. Barlow, 132 Neb. 166, 271 N. W. 282; Gentle v. Pantel Realty Co., 120 Neb. 630, 234 N. W. 574; Furrer v. Nebraska Building & Inv. Co., 109 Neb. 1, 189 N. W. 295;

Bee Publishing Co. v. State, 107 Neb. 74, 185 N. W. 339. The record of the conviction as contained in the journal entry falls far short of complying with these requirements.

The record of the conviction of the plaintiffs in error does not exhibit any question said to have been propounded to Harold L. Jorgenson while he was a witness which he refused to answer. The statutory requirement that "such question must be stated in the order" was not observed. § 25-1232, R. R. S. 1943. In fact, there is in the record no evidence, of the character required, that any interrogatory was propounded to Harold L. Jorgenson. The record is silent as to any refusal by him to answer any question except the conclusion of the court that he refused "to testify in said regard." There is no proof that the court ordered or admonished Harold L. Jorgenson to answer any question or that such action of the court was requested by anyone. There was likewise no assertion that he contumaciously refused. The record contains no proof that any inquiry was made of him concerning any matter that was pertinent to any issue in the case on trial at the time of the alleged contempt. The findings are fatally defective and insufficient in not disclosing facts establishing that a proper and legal interrogatory was asked him and that answer thereof was contumaciously and unlawfully refused. It is not every refusal of a witness to answer a question asked him on a trial which amounts to direct contempt. The contempt the statute speaks of in this regard is the "contumacious and unlawful * * * refusal to answer any legal and proper interrogatory." § 25-2121, R. R. S. 1943. The record fails to sustain the conviction of either of the plaintiffs in error for contempt of the district court.

The cross-appeal of Beatrice Foods Co., Inc., a corporation, defendant in error, because of what has been said and concluded herein, should be and it is denied.

The judgment should be and is reversed and the cause

is remanded with directions to the district court for Lancaster County to enter an order discharging plaintiffs in error from the conviction of contempt of said court.

REVERSED AND REMANDED WITH DIRECTIONS.